**SMITH v. RED IRON DRILLING CO. et al.**

**No. 5932.**

Court of Appeal of Louisiana.

Second Circuit.

June 28, 1939.

Rehearing Denied July 17, 1939.

Writ of Certiorari and Review Denied Oct. 30, 1939.

J. Fair Hardin, of Shreveport, for appellants.

Jones & Jones, of Marshall, Tex., and Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff was injured on June 6, 1937, while performing manual labor for his employer, Red Iron Drilling Company, in the Parish of Claiborne. His injuries were so serious that it was conceded that he was totally disabled to work, and, for that reason, was paid compensation for 37 weeks at the rate of $20 per week. Thereafter, there was cessation of payments for the alleged reason that he had recovered sufficiently to resume the character of work he had previously done. This suit against the employer and the carrier of its compensation insurance, the Southern Underwriters, followed. Compensation at the rate of $20 for 400 weeks is sought on the basis of total permanent disability.

Defendants appealed from a judgment for plaintiff awarding him compensation at $20 per week during the period of his disability, not exceeding 400 weeks, less payments theretofore made.

The only issue in the case is one of fact. That issue is whether plaintiff's total disability to do work of any reasonable character had continued to time of trial.

Plaintiff, when injured, was 36 years old. He was physically strong and vigorous. His schooling carried him only to the eighth grade in high school. He has followed oil field work for fifteen years, and belongs to that class of workmen in such fields commonly referred to as "roughnecks". To efficiently perform the arduous duties he was called upon to discharge, he needed to be physically and mentally vigorous and alert. Perfect use of his head and eyes was indispensable to efficient and effective work in his line.

Plaintiff was struck rather violently on the back of his neck and left shoulder by a swinging section of oil well casing. The section had been detached from a string of the casing. It was fastened to a steel cable running up through a block at the top of the derrick. The cable was lowered or lifted through this block. When drawn upward, the section of pipe was carried to the desired height. The man, whose duty it was to "rope" the casing as it was lifted, failed in his effort to do so. It swung across the derrick floor and struck plaintiff who was at the time in a stooping position. He was knocked down and remained so until assisted to rise by fellow workmen.

Not knowing the seriousness of the trauma, plaintiff did not consult a physician that afternoon, but his condition was such the next morning that the services of one was deemed necessary. A local physician was consulted. The testimony of this doctor was not taken on trial. The treatment given by him was not productive of relief. Plaintiff then came to Shreveport and placed his case in the hands of Dr. J. R. Brown in the Tri-State Sanitarium. He was then complaining of serious pains in and about the left shoulder. Dr. Brown caused X-ray pictures to be made of the injured region. These revealed compressed fractures of the fifth and sixth cervical vertebrae (lower neck). No picture was made of the dorsal vertebrae. The patient was put to bed and hyper-extension prescribed for his relief. A sand-bag was placed on his neck and other appliances, appropriate to the case, were fixed about the head and neck. Weights were attached. This method of

treatment was designed to reduce the fractures and hold the injured vertebrae in rectified position until callus formed about the lines of fracture. This continued for 43 days.

The hyper-extension treatment was replaced by an aluminum neck brace, the function of which was, to a large extent, to immobilize the neck so that further callus formation would take place as it was found that up to that time the formation had not been as progressive as had been expected. This brace was worn for 60 days.

Dr. Brown again examined plaintiff the latter part of March, 1938, which was after this suit was filed. Other X-ray pictures were then made. These revealed slight deformity of the two vertebrae previously found to have been fractured.

Dr. Brown was introduced as a witness for defendants, but he proved to be very effective on plaintiff's behalf. We have no doubt that his testimony is entitled to that high degree of credit which courts uniformly delight to accord to medical experts. When asked about plaintiff's ability to perform manual labor, he replied: "I would say it is a very short time to expect a man to go back to work after one of those injuries, etc." He was also asked this question: "Is it your opinion that this man is able to perform active manual labor, such for instance, as working on a drilling rig?" To which he answered: "No, as my report to the insurance company showed, I told him he should be granted a further extension of time to regain the use of himself; the report to the insurance company showed that." He also testified: "Q. From your examination, is Mr. Smith permanently and totally disabled from doing work of any character? A. No, sir; I do not feel that he is."

This testimony, when closely analyzed, does not contradict that which is quoted supra. One may be totally disabled but not permanently so. The question, if divided, and it should be if intelligently answered, is susceptible of two different answers. The doctor, in view of what he had previously testified, meant to say that he did not think plaintiff was permanently totally disabled, but that his disability, while total, was only temporary.

Dr. Edwards, who qualified as a physician, specializing in the use of radium and X-rays in diagnosing cases, examined plaintiff and made pictures of his neck (cervical spine) on January 5 and April 11, 1938. The first pictures made disclosed several abnormalities described by him as follows, viz.: Narrowing of the intervertebral spaces between the second, third, fourth, fifth and sixth vertebrae with lipping on the anterior surface of the lower rim of the fourth; all of which, he states, provides strong evidence indicative of injury to the inter-cebral disks; also found fracture of the transverse or spinous process of the first dorsal vertebrae, and a fracture of the pedicle of the sixth cervical vertebrae.

The second picture made by Dr. Edwards, some three months after the first, revealed no improvements over the prior revelations.

Dr. Edwards thought these abnormalities productive of nerve irritation and pressure symptoms complained of by plaintiff, and should be accredited with the pain, discomfort and sleeplessness which plaintiff was experiencing. He was certain plaintiff was wholly disabled to do manual labor. He found material impairment in plaintiff's ability to rotate his neck and head, and definite limitation upon his power to look upwards or down, and attributes these physical conditions to the effect of the injuries to the back of the neck.

Dr. Khurry read the pictures made by Dr. Edwards and materially, though not fully, corroborated his interpretation thereof. He was of the opinion that plaintiff was disabled to do heavy work, such as he had so long followed.

Other physicians testified in the case. One was unable to determine that plaintiff had suffered any injury whatever. Aside from this one, the others did not in all respects contradict what we find to be the established facts of the case. Anyway, their testimony does not to any material extent overcome the certainty of the case made out by plaintiff by and with the testimony of Drs. Brown, Edwards and Khurry.

In addition to the expert testimony, the lay evidence in the case, consisting of plaintiff's, that of his wife and a friend, when viewed in the light of the nature of the blow which injured him, his long stay and the character of treatment in the sanitarium and the wearing of a brace for two months thereafter, go far toward establishing the truth of his allegations of total disability.

The evidence satisfies us, as it did the trial judge, that the power of rotation of plaintiff's neck and head and his ability to

raise the head upwards or to look downward, have been so reduced that total disability to do manual labor, especially that sort of labor in which he engaged for so many years, has resulted. Whether this impairment will increase or gradually disappear is a question over which the doctors differ. Dr. Edwards thinks it will grow worse. The fact that it had persisted for nearly a year at time of trial is pointed to as evidence of probable permanency. The pain and discomfort present contribute measurably to the disability.

As stated in the beginning, a question of fact only is tendered in the case. The lower court's disposition of that question appears to be eminently correct. Its judgment is affirmed with costs.